Railroad v. Wyrick.

RAILROAD v. WYRICK.

(*Knoxville.* October 9, 1897.)

1. CHARGE OF COURT. *Defects in, cured by requests.*

Complaint that Court's charge was so confused as to throw no light upon the issues involved, and was positively misleading and erroneous, is obviated when, at the request of the complaining party, the Court gave elaborate supplemental instructions covering the case. (*Post, p. 505.*)

2. SAME. *Court need not explain to jury term "not guilty."*

The Court need not, in the absence of a special request, explain to the jury the term "not guilty," in defining the issues made in the pleadings in an action for personal injury. (*Post, p. 505.*)

3. SAME. *Error as to lookout on train harmless.*

Error in instructions to jury that both the engineer and fireman on a railroad train should keep a lookout ahead for persons on the track, is harmless to defendant in an action by the wife of a person killed on the track, where defendant does not claim that it observed the statutory precaution that either the engineer or fireman should be on the lookout. (*Post, p. 506.*)

4. EVIDENCE. *Res gestæ.*

Evidence that the brakeman on defendant's train shoved or kicked plaintiff's intestate from a train at a specified point, is admissible as part of the *res gestæ*, in an action for his killing at another point by a train closely following that from which he was ejected. (*Post, pp. 506, 507.*)

5. MEASURE OF DAMAGES. *None allowed for mental and physical suffering of widow.*

No recovery can be had, in an action for negligently causing the death of plaintiff's husband, for the mental and physical suffering of the widow, under Shannon's Code, § 4029, authorizing a recovery, in case of death, for the mental and physical suffering, loss of time, and necessary expenses resulting to the

Railroad v. Wyrick.

"deceased" from the personal injuries, and also the "damages" resulting to the parties for whose benefit the right of action survives. (*Post, pp. 507–511.*)

Code construed: § 4029 (S.); § 3134 (M. & V.).

Cases cited: Railroad v. Prince, 2 Heis., 585; Trafford v. Express Co., 8 Lea, 96; Railroad v. Smith, 9 Lea, 470; Railroad v. Toppins, 10 Lea, 58; Fowlkes v. Railroad, 9 Heis., 829; Railroad v. Gurley, 12 Lea, 53; Railroad v. Pounds, 11 Lea, 129; Railroad v. Stevens, 9 Heis., 12; Railroad v. Stacker, 86 Tenn., 343; Railroad v. Spence, 93 Tenn., 173.

## FROM GRAINGER.

Appeal in error from Circuit Court of Grainger County.    W. R. HICKS, J.

WASHBURN, PICKLE & TURNER for Railroad.

SHIELDS & MOUNTCASTLE for Wyrick.

MCALISTER, J.    The defendant in error, Arminda Wyrick, recovered a verdict and judgment in the Circuit Court of Grainger County against the railroad for the sum of $5,500 for the alleged negligent killing of her husband.  A motion for a new trial and in arrest of judgment was made on behalf of the company.  The Circuit Judge was of opinion the damages assessed by the jury were excessive, and plaintiff's counsel entered a remittitur of $2,500. The Court, thereupon, overruled the motion for a new trial, and pronounced judgment in favor of

plaintiff below for $3,000. The company appealed, and has assigned errors.

It appears from the record there was no eye-witness to the killing, and from the circumstances surrounding the case two distinct theories have been projected by the respective parties. The theory advanced on behalf of the company is that the deceased did not appear as an obstruction upon the track in front of the train, but either fell from the train while stealing a ride, or met his death while attempting to board a train in motion. Evidence was introduced on behalf of the company, tending to show that, on Friday evening, March 20, 1896, the deceased, while drunk, boarded the engine of a freight train belonging to plaintiff in error while it was standing on the side track at Luttrell Station. The deceased was invited by the engineer to leave the engine, but he obstinately refused to do so, saying he would go to Knoxville on that engine if the train went. He accordingly persisted in remaining upon the engine until the train reached Corryton, the next station, distant about four miles from Luttrell, where the engineer and fireman quit the engine, hoping, thereby, deceased would be induced to follow them. Deceased did leave the engine, and walked along the track to the rear of the train. The engineer, seizing the opportunity, immediately moved his train forward, supposing the deceased had been left at the station. When about half way, however, to the next station, the deceased was discovered by a brakeman

sitting on top of a coal car about the middle of the train. Arriving at Maloneyville, the next station, the deceased was forcibly ejected from the train. The train then pulled out for Knoxville, and the deceased was not again seen by this crew. Another freight train—being the second section of the train just mentioned—followed in a short time, and, after proceeding for about a mile west of Maloneyville, was stopped, and the remains of deceased were found bruised and mangled lying on the track some fifteen or twenty feet in the rear of this train. The body had been partially denuded of its clothing, and there were signs on the roadbed that it had been dragged. Near the center of this train, hanging to a brake beam under a freight car, was found part of deceased's coat.

It is conceded, or at least the fact does not admit of serious controversy, that deceased was killed by the second section of this freight train, but it is a disputed question how the death occurred. The crew of the second section were all in attendance at the trial, under the subpœna of the company, but no one of them was examined as a witness. The theory of the company is that deceased did not appear on the track in front of the engine so as to require on its part an observance of the statutory precautions, but that he climbed upon its train and fell between two of its cars and was dragged. In support of this theory it is claimed that the body of deceased did not present the appearance of having been crushed

Railroad *v.* Wyrick.

under the wheels of the train, and that the fragment of coat hanging from the brake beam is the only evidence of contact of the body with the train. Evidence was introduced for the company tending to show that a man could fall between two freight or coal cars and escape being run over and crushed by the wheels, but that the rods and rigging of the brakes were so suspended below the axles of the trucks, and in such proximity to the roadbed, as almost surely to catch the clothes of a man lying on the roadbed between the rails.

The theory of the defendant in error is that deceased, while walking upon the track, was struck and run over by one of defendant's trains and killed; that the track, for 450 feet east of the place where deceased was struck, is perfectly straight, and there were no curves to prevent seeing an object upon the track for that distance; that the employees of the company were either not on the lookout for obstructions upon the track, or, being on the lookout, and seeing deceased, did not observe the precautions required by law, and that the jury were well warranted in drawing either deduction from the silence of the crew in charge of the train, who were summoned and yet not examined as witnesses. It is insisted in behalf of the defendant in error that this theory is further strengthened by the fact that after deceased had been forcibly ejected from the first section of this freight train, he was seen to walk westwardly along the railroad track, in the direction of Knox-

ville, and that the mangled remains of deceased indicate that he was caught by the train and dragged along the track for some distance by the pilot of the engine.

The respective theories were submitted to the jury, and they have adopted the contention of defendant in error.

The first assignment is that the entire charge is so confused as to throw no light on the issues involved, and is positively misleading and erroneous. The infirmities in the charge, as a whole, were cured by the very elaborate supplemental instructions prepared by counsel for plaintiff in error, and at their request given in charge to the jury. So that the exception to the charge as a whole must be overruled.

Descending into particulars, the second assignment is that the Court, in defining the issues made in the pleadings, should have explained to the jury the meaning of the term "not guilty." We think this exception is hypercritical, especially as counsel made no request for additional instructions. The term itself is not difficult of comprehension, and we think would convey, even to the ordinary mind, the meaning that it was a denial of the charges in the declaration.

The Court charged fully that the burden was upon plaintiff to make out her case by a preponderance of evidence, and that in order to render defendant liable, it must have been guilty of negli-

gence which was the prime, proximate, and immediate cause of the death.

The fourth assignment is that the Court erred in charging the jury that one of the statutory precautions required was that the railroad should keep on the lookout ahead, the engineer and the fireman. While it must be conceded that this instruction was erroneous, yet in the light of this record the error was innocuous.

Defendant did not insist, on the trial below, that it was in the observance of the statutory precautions. It made no such defense, and hence neither the engineer nor fireman was introduced as a witness. There was no proof on this subject whatever, and the defendant has not been deprived by the charge of the Court of any defense upon which it relied. If the company had shown, or it had otherwise appeared in the proof, that at the time of the accident either the engineer or fireman was on the lookout ahead, this would have satisfied the statute, and it was not necessary that both should have been on the lookout, as erroneously charged by the Court. The error, however, is harmless, and is not a reversible one.

The sixth assignment is that the Court erred in not excluding from the jury evidence tending to show that at Maloneyville one of the crew of the first section shoved and kicked the deceased in the ditch at some time that night previous to the killing.

This evidence plaintiff claims was offered to rebut
the theory of the company that deceased fell from
a moving train, which it claimed he had boarded
at Maloneyville. The evidence shows that deceased
had been ejected from the train at Maloneyville,
and walked forward along the track in the direction
in which he was afterwards found. The Circuit
Judge, in his charge to the jury, told them to look
at that fact along with the other facts and circum-
stances merely to see under what circumstances, if
any, he was injured. The Court further charged
that the mere fact that deceased was shoved or
kicked is not at all material in determining the rights
of the parties. "It is not a material question,"
said the Court, "to look at here."

We see nothing here of which the company can
complain. The act of the brakeman in shoving or
kicking deceased from the train at Maloneyville was
part of the *res gestæ*, as much so as the fact that
deceased left the engine at Corryton and then climbed
back on a coal car. It is all a part of the history
of the case. The fact that the brakeman, in eject-
ing deceased from the train, acted with unnecessary
force, or even with brutality, was the fault of de-
fendant, and the evidence, competent for other pur-
poses, could not be excluded on that account.

The seventh assignment is that the Court erred
in charging the jury upon the measure of damages,
to wit, "that they could look to the mental and phys-
ical suffering of the plaintiff [widow] in connection

with the loss of her husband." It is insisted, on behalf of defendant in error, that this charge is authorized by the Act of 1883, embodied in § 4029, Shannon's Code, viz.: "Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages, as provided for in §§ 4025–4027, inclusive, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose ,use and benefit the right of action survives from the death consequent upon the injuries received." It will · be observed that the statute expressly authorizes a recovery for the mental and physical suffering endured by the deceased, but, without enumerating any special elements, allows a recovery for the damages resulting to the parties for whose use and benefit the right of action survives, etc.

The question, then, presented for adjudication is whether the word damages used in this statute was intended to embrace the mental and physical suffering resulting to the widow or next of kin. The Act of 1883 is almost a literal transcript of the rule for the admeasurement of damages laid down in the case of *Nashville & Chattanooga Railroad Co.* v. *Nancy Prince*, 2 Heis., 585. That case was afterwards overruled and the doctrine of the earlier cases reaffirmed, which held that those entitled to recover

damages on account of the death of the injured party could recover only such damages as he could have recovered had he survived the injury. *Trafford* v. *Adams Express Co.*, 8 Lea, 96; *Railroad Co.* v. *Smith*, 9 Lea, 470; *Railroad* v. *Toppins*, 10 Lea, 58; *Fowlkes* v. *N. & D. R. R. Co.*, 9 Heis., 829; *Railroad* v. *Gurley*, 12 Lea, 53; *Railroad* v. *Pounds*, 11 Lea, 129. These rulings gave rise to the Act of 1883, which is simply a legislative enactment of the rule for the assessment of duplicate damages laid down in the Prince case, 2 Heis., 580. In the case of *Nashville & Chattanooga Railroad Co.* v. *Mary Stevens, Admr.*, 9 Heis., 12, decided in 1871, it appeared that the trial Judge had instructed the jury that they might allow damages "for the shock to the feelings of the wife and children resulting from the sudden death of deceased."

Judge McFarland, in referring to the Prince case, said, viz.: "The result of this decision was to make our statute [Shannon, § 4025] embrace, in addition to the damages for the suffering of deceased, his loss of time, etc., had he lived, also the pecuniary loss his death caused to his widow and children or next of kin; and, in this latter respect, the subject-matter of damages is similar to the statutes of New York and Pennsylvania, and, as we have seen, they are confined to pecuniary damages, and do not allow damages for the grief of the widow and children. We think this is safest; in fact, as remarked by counsel, it is somewhat incongruous to undertake to

give compensation to the widow for her grief. We do not see how we could extend our statutes further than the New York and Pennsylvania statutes. We do not doubt the construction given in the Prince case, but we can carry it no further." We are of opinion, therefore, that when the rule for the assessment of damages announced in the Prince case was re-enacted, by the Act of 1883, it was adopted as it was understood and interpreted by the Courts, and was not intended further to enlarge the elements of damages. The damages allowed to the widow and next of kin, resulting to them, laid down in the Prince case, was construed by this Court in the Stevens case to mean pecuniary loss, and not damages on account of grief and mental suffering of widow or next of kin. This construction, we think, is in accord with the great weight of authority on this subject.

In *Penn. R. R. Co.* v. *Butler*, 57 Pa., 335–358, Judge Sharswood thus stated the rule, to wit: "After an attentive examination and review of all the cases which have heretofore been decided, we are of opinion the proper measure of damages is the pecuniary loss suffered by the parties entitled to the sum to be recovered, in this case the children, without any solatium for distress of mind, and that loss is what the deceased would probably have earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children, taking into consideration his age, ability, and

Railroad v. Wyrick.

disposition to labor, and his habits of living and expenditures.''

It will be observed that Judge Sharswood is dealing with the damages resulting to the widow or next of kin; but under our Act of 1883, damages for the mental and physical suffering, loss of time, etc., of the deceased are also recoverable, and are superadded to the pecuniary damages sustained by the widow or next of kin.

' In Iowa it is held no damages can be given, under the statute, for mental suffering and grief occasioned by the death of deceased (*Kelly* v. *Central R. R.*, 4 McC., 653), and this is the general rule. 2 Sedgwick on Damages, Sec. 574, and cases cited. Says Mr. Sutherland in his work on damages, Vol. I., Sec. 96, viz.: ''The rule in England, and most of the American states, is, that only compensation for the pecuniary loss, which has been sustained by the death of husband, father, child, or other relative, can be recovered against the wrongdoer. The Scotch law allows a recovery for wounded feelings.''

In *Hyatt* v. *Adams*, 16 Mich., 180, Judge Christiancy, in discussing this subject, said: ''These considerations show the good sense and propriety of the rule which restricts the right of action for mental suffering to the person who has received the physical injury.'' In accord with this rule are *Railroad* v. *Stacker*, 2 Pickle, 343, and *Railroad* v. *Spence*, 9 Pickle, 173.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.