Max F. WALLACE, father and next of kin of Jeffrey M. Wallace, Deceased, Appellant,

v.

Donald P. COUCH and David L. Couch, Appellees.

Supreme Court of Tennessee.

Sept. 7, 1982.

Rehearing Denied Dec. 6, 1982.

John K. Morgan, Morgan, Garner, Wood & Guthrie, David R. Prickett, Morgan, Garner, Wood & Guthrie, Chattanooga, for appellant.

David E. Harrison, Stringer & Grant, P.C., Chattanooga, for appellees.

OPINION

ALLISON B. HUMPHREYS, Special Justice.

This is a wrongful death case in which the issue is whether the trial judge erred in giving the jury the following instruction:

"You are charged that when determining the amount of damages based upon life expectancy and earning capacity there should be a deduction of the deceased's probable living expenses had the deceased lived. These living expenses are those that under the standard of living followed by the deceased would have been reasonably necessary for him to incur in order to keep himself in such a condition of health and well being that he could maintain his capacity to earn money."

The jury returned judgment for plaintiff in the amount of $65,534. On motion for a new trial, the trial judge made an additur to the judgment, in the amount of $9,466, and final judgment was entered in plaintiff's favor in the amount of $75,000.

The Court of Appeals approved the charge in question and affirmed the judgment. This Court granted review because of the novelty of the question.

The facts are that on August 19, 1978, plaintiff-appellant's son, Jeffrey M. Wallace, was killed instantly when an automobile he was driving collided head-on with an automobile driven by David L. Couch. Plaintiff-appellant brought suit under T.C.A. §§ 20–5–106 and 20–5–107, the Tennessee Wrongful Death Act. The issues were negligence, proximate cause and contributory negligence. There is evidence to support the verdict, so this aspect of the case is of no concern.

■ Capsulated, plaintiff-appellant's contention is that the only elements for the jury's consideration in a case like this, where death is instantaneous, are those set out in *Davidson Benedict Co. v. Severson,* 109 Tenn. 572, 614–615, 72 S.W. 967, 977 (1902), as follows:

"his [the deceased's] expectancy of life, his age, condition of health and strength [citations omitted], capacity for labor, and for earning money through skill in any art, trade, profession, occupation or business [citations omitted], and his personal habits as to sobriety and industry [citations omitted]; all modified, however, by the fact that the expectation of life is at most only a probability, based upon experience, and also by the fact that the earnings of the same individual are not always uniform [citations omitted]."

Citing many cases that use this quotation, plaintiff-appellant's counsel forcefully argues that as the minus factor, probable living expenses, is not mentioned in *Davidson Benedict* nor in any of the cases following after it, it was improper for the trial judge to instruct the jury as he did, thereby adding to the elements mentioned in *Davidson Benedict,* the additional element, the deduction of probable living expenses.

The fault in this argument is that *Davidson Benedict* did not consider the question of deducting probable living expenses nor was the question considered in any of the other cases cited in connection with this argument. Apparently it was not brought to the attention of the Court by the parties and so went undecided and uncommented on.

The question has not, however, entirely escaped attention. In *Calfee v. O'Neal Steel, Inc.,* (Tenn.App., E.S., filed June 22, 1976), an unreported opinion, an instruction to this effect was held to be "proper in a broad sense" but that failure to give it upon request was not error, because there was no evidence on that issue.

This statement was based on the old case of *Knoxville, C.G. & L. Railroad Co. v. Wyrick,* 99 Tenn. 500, 42 S.W. 434 (1897), where the following is found:

"[that the] statute embrace[d], in addition to the damages for the suffering of deceased, his loss of time, etc., had he lived, also the pecuniary loss his death caused to his widow and children or next of kin; and, in this latter respect, the subject-matter of damages is similar to the statutes of New York and Pennsylvania, and, as we have seen, they are confined to pecuniary damages, ...." *Id.* at 509, 42 S.W. at 436.

In the next paragraph it was shown by quotation from *Pennsylvania Railroad Co. v. Butler,* 57 Pa. 335, 338 (1868), that by pecuniary loss it was meant

"what the deceased would probably have earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditures." *Id.* 99 Tenn. at 510–511, 42 S.W. at 437.

Because of the similarity of the Tennessee, Pennsylvania and New York Wrongful Death Statutes, this Court has looked favorably on the constructions placed on their statutes by the Pennsylvania and New York courts. In the case of *Nashville & Chattanooga Railroad Co. v. Stevens,* 56 Tenn. 12 (1871), referring to the similarity between the Tennessee Wrongful Death Statutes and those of New York and Pennsylvania, the Court stated, at page 18:

"[In] this . . . respect, the subject matter of damages is similar to the statutes of New York and Pennsylvania; and as we have seen, they are confined to pecuniary damages, . . . .

We do not see how we could extend our statutes farther than the New York and Pennsylvania statutes."

The Supreme Court of Pennsylvania, in the case *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971), stated the reason for making a deduction for decedent's personal expenses as follows:

"When a negligently injured party is fully disabled, his injury prevents him from supporting himself, from directing his earnings to the benefit of his family or other dependents, and from accumulating an estate. Quite properly, the injured plaintiff should receive as damages his total estimated future earnings undiminished. But if such a plaintiff dies, his action, whether commenced or continued by his personal representative, is for the benefit of the estate. We cannot be blind to the reality that neither the deceased person nor his estate is burdened with the personal maintenance costs of the decedent. It thus becomes clear that the proper measure of damages designed to be compensatory must include a deduction based upon a decedent's cost of personal maintenance." *Id.* at 229, 282 A.2d 206.

As an award for death to the beneficiaries, without a reduction of the deceased's living expenses, would include an amount which the beneficiaries could not possibly receive, the overwhelming majority rule has evolved as stated in 76 A.L.R.3d 125 (1977), as follows:

"Once it has been held that damages for a decedent's lost future earnings can be recovered in a survival action, the next question is how such damages are to be measured. The current position in all of the jurisdictions in which this question has been considered is that the recovery for a decedent's lost future earnings is not to be measured by the decedent's gross earnings, but by his net earnings, which consist of gross earnings minus personal maintenance expenses." *Id.* at 131.

As we have noticed, in *Calfee v. O'Neal Steel, Inc., supra,* the Court of Appeals said that an instruction along this line would be proper in a case where the subject had been dealt with as an issue and evidence directed toward it. In support of that statement that Court cited 22 Am.Jur.2d *Death* § 153 (1965), which we adopt to this extent:

"Consideration of the decedent's living expenses seems clearly proper in determining the pecuniary loss suffered by the beneficiary as a result of his wrongful death. And consideration of these expenses has also been held to be proper in an action under a statute authorizing a recovery for the injury to the person and 'estate' of the wrongfully killed person.

In estimating damages, the deduction of the decedent's probable personal living expenses, had he lived, should extend to those personal expenses which, under the standard of living followed by him, would have been reasonably necessary for him to incur in order to keep himself in such a condition of health and well-being that he could maintain his capacity to enjoy life's activities, including the capacity to earn money."

In Stuart M. Speiser's treatise *Recovery for Wrongful Death,* (2d ed. 1975), which deals extensively and fully with the subject of recovery for wrongful death, the following is to be found:

"With rare exceptions, in both loss-to-survivors and in loss-to-estate wrongful death actions, from any decedent's probable total future earnings and/or income, that portion that would no doubt go to either the surviving beneficiaries or to the estate must be calculated. To reach this final figure, two methods of calculations, in the main, have been employed: (1) the prospective personal expenses of the decedent are deducted from gross earnings, with the remainder, in some instances also less other deductions, being considered as probable contributions to beneficiaries or as the ultimate loss to

decedent's estate; (2) the prospective contributions are determined by itemizing actual contributions to the claimant.

Method (1) is the more common, shorthand approach, ...." *Id.* at § 3:6, pp. 140–142.

It is evident that we should use method of calculation number one.

From all of the foregoing, we are of the opinion the instruction given the jury correctly stated the law on the subject.

■ This holding does not, however, decide this case. Plaintiff-appellant contends that, even if the instruction correctly stated the law, it should not have been given because of the lack of evidence on the issue of personal maintenance expenses. In support of this contention, plaintiff-appellant relies on *Calfee v. O'Neal Steel, Inc., supra.* This reliance is based on the *Calfee* court's refusal to apply the personal maintenance expense rule in that case (even though it held that such expenses would be deductible in a proper case) because there was no evidence on this issue.

This aspect of *Calfee* does not apply here because the maintenance issue was not involved in the trial of that case and so never addressed by the parties in developing their case. But in this case, as early as the time of the taking of discovery interrogatories of plaintiff-appellant, questions were asked which should have put him on notice that personal maintenance expenses as a deduction in determining present net pecuniary value of decedent's life would be an issue. And throughout the trial defendant-appellee asked questions of decedent's parents and of plaintiff-in-error's expert witness, attempting to elicit information with respect to what these expenses would probably be. While it is true that not a lot was brought out by these questions, there is some evidence bearing on this issue, enough, in view of the notice plaintiff-appellant had that the deduction of maintenance expenses was an issue, to warrant an instruction thereon.

■ In a wrongful death case, where there is evidence as to life expectancy, health and habits, present living conditions and standards, all bearing on the manner and nature of decedent's present scale of living, it is not unreasonable to permit a jury to use this information in projecting future living expenses in order to reach a verdict. It is not inevitable that decedent would have lived to join the work force, nor that he would have enjoyed health enough to join the work force, nor that he would have entertained the attitude to join the work force. However, it was inevitable that, if the decedent had lived and worked and earned an income, he would have had living expenses. This puts it within the category of those matters of which jurors may to some degree rely on their everyday experience and knowledge, especially when this is bolstered by such evidence as is found in this case. In 9 *Wigmore on Evidence,* § 2570, p. 726 (3d ed. 1981), the following is found:

"In general, the jury may in modern times act only upon evidence properly laid down before them in the course of the trial. But so far as the matter in question is one upon which men in general have a common fund of experience and knowledge, through data notoriously accepted by all, the analogy of judicial notice by the judge obtains here also, to some extent, and the jury are allowed to resort to this information in making up their minds.

This doctrine, of course, has several aspects. From the point of view of the jury's duty it appears as an exception to the rule that they must act only upon what is presented to them at trial."

On the basis of all of the foregoing, the judgment of the Court of Appeals is affirmed. Costs are adjudged against plaintiff-appellant.

HARBISON, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.

ALLISON B. HUMPHREYS, Special Justice.

OPINION ON PETITION TO REHEAR

A petition to rehear has been filed. After thorough consideration, it is denied.

The Court prefers to adhere to the propositions of law set out in its Opinion.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.