# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

FILED

August 22, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

BRUCE HUTTON, Administrator  )
of the Estates of Floyd Hutton and  )
Lena Hutton, Deceased,  )
                          )
      Plaintiffs/Appellees,  )
                          ) Hardin Circuit No. 2403
                          )
VS.  ) Appeal No. 02A01-9612-CV-00314
                          )
CITY OF SAVANNAH, TENNESSEE,  )
                          )
      Defendant/Appellant.  )

## APPEAL FROM THE CIRCUIT COURT OF HARDIN COUNTY
## AT SAVANNAH, TENNESSEE
## THE HONORABLE JULIAN P. GUINN, JUDGE

**JAMES A. HOPPER**
Savannah, Tennessee
Attorney for Appellant

**EDWARD L. MARTINDALE, JR.**
**DREW AND MARTINDALE, P.C.**
Jackson, Tennessee
Attorney for Appellee

**AFFIRMED AS MODIFIED**

                                                   **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**WILLIAM H. INMAN, SR. J.**

In this wrongful death action, Defendant City of Savannah appeals the trial court's final judgment awarding $260,000 to Plaintiff/Appellee Bruce Hutton, administrator of the estates of his parents, Floyd and Lena Hutton. For the reasons hereinafter stated, we affirm the trial court's judgment, but we modify the amount of the judgment.

On the morning of March 5, 1995, Floyd and Lena Hutton were killed in a car accident at the intersection of Highway 69 and Airport Road in Hardin County. The weather was cloudy and rainy that morning. Employees of the City of Savannah were repairing a broken water line near the intersection when the accident occurred. A stop sign positioned at the intersection required traffic on Airport Road to stop before crossing Highway 69, while vehicles on Highway 69 were not required to stop. A City employee served as the flagman directing traffic on Airport Road past the construction site and through the intersection. The flagman first saw the Huttons' vehicle, which was driven by Floyd Hutton, when it was still fifty to sixty feet away. The Huttons' vehicle proceeded west on Airport Road toward the intersection at a speed of about ten miles per hour. As the Huttons' vehicle proceeded through the intersection, it was struck by a tractor-trailer traveling south on Highway 69. The Huttons were killed instantly.

The Plaintiff subsequently brought this wrongful death action against the City of Savannah. At trial, the parties presented conflicting evidence as to the flagman's actions just prior to the accident. The City's flagman testified that his flag was positioned for traffic on Airport Road to stop as the Huttons approached the intersection. After he turned to check the flow of traffic on Highway 69, he realized that the Huttons' vehicle had not stopped at the flag but had entered the intersection. The Plaintiff, on the other hand, presented evidence that the flagman waved the Huttons through the intersection without making sure that no traffic was approaching on Highway 69. The driver of the tractor-trailer testified that, shortly after the accident, the flagman admitted that he flagged the Huttons through the intersection and that he did not see the tractor-trailer approaching.

A dispute also arose as to whether the City had positioned its construction vehicles alongside Highway 69 so as to block the drivers' views. City employees testified that no

construction vehicles were parked along the east side of Highway 69. The tractor-trailer driver, however, testified that there were vehicles alongside the highway and that City employees moved the vehicles before the police arrived. Other witnesses also testified that they observed City vehicles parked along Highway 69.

At the time of their deaths, Floyd Hutton was seventy-nine years of age and Lena Hutton was seventy. Floyd Hutton had retired from Paris Manufacturing when he was in his early sixties, and Lena Hutton was a homemaker throughout the marriage. Both were active and in good health. Floyd Hutton, who had a life expectancy of 6.53 years, received social security payments of $428 each month. Lena Hutton, whose life expectancy was 13.37 years, received $427 in social security payments each month. The Plaintiff and his wife and two children lived next door to the Huttons. The Huttons helped the Plaintiff by feeding and seeing the children off to school each morning and by picking up the Plaintiff's son from school every afternoon. Additionally, Floyd Hutton worked plowing gardens for himself, his neighbor, and the Plaintiff's brother-in-law. In the summers Lena Hutton engaged in gardening and canning, and in the winters she quilted. The parties stipulated that each of the Huttons' estates incurred $5,224.47 in funeral expenses and $157.50 for ambulance services.

On appeal from the trial court's final judgment, which awarded each of the Huttons' estates the maximum recovery permitted by law,[1] the City presents the following issues for this court's review:

> ISSUE NO. 1: [Whether the] preponderance of the evidence in this case is that the Huttons were guilty of more than 50% negligence in this accident, which negligence would bar them from any recovery.
>
> ISSUE NO. 2: [Whether the] Huttons' recovery is excessive and shocking under the proof in this case, in that there was no proof presented by the Huttons of the pecuniary value of each of their lives as required by [Tennessee Code Annotated section] 20-5-113, i.e., future income offset by reasonable and anticipated living expenses.

---

[1] See T.C.A. §§ 29-20-311, -403 (1980 & Supp. 1994).

Inasmuch as this case was tried by the court below sitting without a jury, this court's review on appeal is governed by Tennessee Rule of Appellate Procedure 13(d), which directs us to review the case de novo. Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 865 (Tenn. App. 1985); Haverlah v. Memphis Aviation, Inc., 674 S.W.2d 297, 300 (Tenn. App. 1984); T.R.A.P. 13(d). In conducting a de novo review of the record below, however, this court must presume that the trial court's findings of fact are correct. Under this standard of review, we must affirm the trial court's decision unless the trial court committed an error of law affecting the result or unless the evidence preponderates against the trial court's findings. Roberts, 692 S.W.2d at 865. In this regard, when a conflict in testimony requires the trial court to make a determination regarding the credibility of a witness or witnesses, such a determination is "binding on the appellate court unless from other real evidence the appellate court is compelled to conclude to the contrary." Hudson v. Capps, 651 S.W.2d 243, 246 (Tenn. App. 1983).

Applying the foregoing standard, we affirm the trial court's ruling on the liability issue. The trial court found that evidence of the City's negligence was overwhelming, and we conclude that the evidence does not preponderate against the trial court's finding of liability against the City. In making this finding, the trial court necessarily must have resolved any conflict in testimony in favor of the Plaintiff. After carefully reviewing the record, we have determined that the evidence does not compel a contrary conclusion.

The more difficult issue presented by this case is whether the trial court erred in awarding the Plaintiff $130,000 for each of the Huttons' deaths, given the limited evidence presented at trial regarding the pecuniary value of the Huttons' lives. In a wrongful death action brought in Tennessee, the plaintiff has the right to recover for the following damages:

> [T]he mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties

4

> for whose use and benefit the right of action survives from the
> death consequent upon the injuries received.

T.C.A. § 20-5-113 (1994).

In the present case, damages for the Huttons' mental and physical suffering were not at issue because the parties stipulated that the Huttons died instantly. See McClanahan v. Clayton, No. 01A01-9308-CV-00371, 1994 WL 248183, at *3 (Tenn. App. June 10, 1994), perm. app. denied (Tenn. Aug. 29, 1994). Accordingly, the Plaintiff's recovery was limited to the necessary expenses resulting from the Huttons' injuries, which the parties stipulated to be $5,381.97 apiece, and the pecuniary value of the Huttons' lives. When a plaintiff's recovery is based upon the pecuniary value of the decedent's life, the trial court must make this determination upon a consideration of several factors, including the decedent's life expectancy, "age, condition of health and strength, capacity for labor and for earning money through skill in any art, trade, profession, and occupation or business." Thrailkill v. Patterson, 879 S.W.2d 836, 841 (Tenn. 1994). The resulting amount should then be reduced by deducting the decedent's probable living expenses had the decedent lived. Wallace v. Couch, 642 S.W.2d 141, 144 (Tenn. 1982).

Citing McClanahan v. Clayton, No. 01A01-9308-CV-00371, 1994 WL 248183 (Tenn. App. June 10, 1994), perm. app. denied (Tenn. Aug. 29, 1994), the City contends that the award of damages in this case should be reversed based upon the Plaintiff's failure to prove the pecuniary value of the Huttons' lives. In McClanahan, as in the present case, the plaintiffs' elderly parents were killed in an automobile accident. Mrs. McClanahan died instantly, and Mr. McClanahan died without ever regaining consciousness, so the primary issue at trial was the pecuniary value of each of the decedent's lives. Id., at *3. The plaintiffs presented proof concerning their parents' ages, life expectancies, health, and personal habits. Id., at *4. The plaintiffs also presented evidence that their parents provided them with certain domestic services, such as babysitting the plaintiffs' children (the decedents' grandchildren). Id. The plaintiffs failed, however, to present any proof of the parents' actual earning capacity. Id. Specifically, the plaintiffs did not present any proof concerning their parents' retirement income, such as social security benefits, nor did

5

they demonstrate the value of any of the domestic services provided by the decedents. Id. Based on the plaintiffs' failure to prove the pecuniary value of their parents' lives, the trial court limited damages to the deceased parents' medical expenses and funeral bills. Id., at *1.

On appeal, this court affirmed, reasoning:

> The life of every person has value. The value is not, however, always economically quantifiable. Many times it rests on the emotional bonds and attachments that bind family members together. Personal worth is not measured merely by material accumulations but rather by a person's character, deeds, and contributions to family, friends, and the community. This appeal does not concern itself with the personal value of the lives of Mr. and Mrs. McClanahan but rather with the narrow issue of the "pecuniary value" of their lives for the purpose of [Tennessee Code Annotated section] 20-5-113. While we have no doubt of Mr. and Mrs. McClanahan's inestimable value to their family, we concur with the trial court's determination that their [children's] proof concerning the "pecuniary value" of their lives is insufficient to warrant a monetary recovery under [section] 20-5-113.

McClanahan, 1994 WL 248183, at *4.

This court's McClanahan decision suggests that, in order for pecuniary value to be recoverable under the wrongful death statutes, the value must be "economically quantifiable." McClanahan, 1994 WL 248183, at *4. In the present case, as in McClanahan, the Plaintiff failed to present proof of the value of the domestic services provided to the Plaintiff by the decedents, such as feeding and seeing the Plaintiff's children off to school each morning and picking up the Plaintiff's son from school each afternoon. The only evidence quantifying the pecuniary value of the Huttons' lives was that Floyd Hutton had a life expectancy of 6.53 years and received social security payments of $428 each month, while Lena Hutton had a life expectancy of 13.37 years and received $427 in social security payments each month.[2] If the Huttons' expected incomes are added to their stipulated expenses, this evidence justifies awards of approximately $75,000

---

[2]Contrary to the City's argument on appeal, previous decisions of this court indicate that, in calculating the pecuniary value of a decedent's life, the fact-finder properly may consider future social security benefits. See McClanahan, 1994 WL 248183, at *4; see also Burr v. State, 1987 WL 15842, at *7 (Tenn. App. Aug. 21, 1987).

6

for Lena Hutton's estate and $40,000 for Floyd Hutton's estate, well below the amounts awarded by the trial court.

We decline, however, to interpret McClanahan as requiring a rigid mathematical calculation based merely on the decedent's earning capacity and life expectancy. The assessment of damages for the pecuniary value of a decedent's life "is not governed by fixed rules of mathematical precision," but is a matter left to the sound discretion of the finder of fact. Thrailkill v. Patterson, 879 S.W.2d 836, 841 (Tenn. 1994) (citing Wilkerson v. Altizer, 845 S.W.2d 744, 749 (Tenn. App. 1992)); accord Strother v. Lane, 554 S.W.2d 631, 636 (Tenn. App. 1976) (noting that there is no set rule by which to measure the value of a life); Crowe v. Provost, 374 S.W.2d 645, 654 (Tenn. App. 1963) (amount of pecuniary damages is not governed by precise mathematical formula). Determining the pecuniary value of a decedent's life, therefore, does not involve merely multiplying the decedent's annual earning capacity by the decedent's life expectancy. See Thrailkill, 879 S.W.2d at 841 (concluding that pecuniary value of decedent's life was not merely what wages decedent might have been able to earn during life expectancy); see also Bellamy v. Sadler, 640 S.W.2d 20, 22 (Tenn. App. 1982) ("Life expectancy tables, earnings and awards in other cases are helpful in the determination of the value of the decedent's life. However, these guides only shed some light on the subject, each case must be decided upon its own facts."); Martindale v. Pillow, 1987 WL 11325, at *8 (Tenn. App. May 27, 1987) (concluding that pecuniary value of decedent's life "cannot be made the subject of mere mathematical calculation, upon the basis of what the deceased would have earned during his expectancy of life"). Even the McClanahan decision recognizes that the permissible range of proof of the pecuniary value of a decedent's life "is very broad and need not be absolutely precise as long as it enables the jury [or other fact-finder] to make a fair and reasonable assessment of damages." McClanahan, 1994 WL 248183, at *3.

Moreover, the courts of this state have recognized that human lives have some intrinsic pecuniary value beyond the market value for their services. In an action by a husband for the wrongful death of his wife, for example, our supreme court declined to limit

the husband's damages to the wages the wife might have been able to earn or to the cost of hiring another to perform the wife's work in the home. Thrailkill v. Patterson, 879 S.W.2d 836, 841 (Tenn. 1994). The court reasoned that this "basis of recovery would overlook the value of the wife's personal interest in the affairs of the home and the economy incident to her services." Id. In another case, "the deceased was a 53 year old mentally retarded person with an eighth grade education who had never been employed." Redd v. Lawrenceburg Power Sys., 1986 WL 5034, at *9 (Tenn. App. Apr. 30, 1986). Although the evidence suggested that the decedent had no earning capacity, this court refused to hold that the decedent's life had no pecuniary value and, in doing so, declined to adopt a rule "which would declare the life of any human being to be worthless." Id.

In awarding the Huttons' estates the maximum allowable recovery, the trial court properly considered the foregoing principles. As in Thrailkill, if the pecuniary values of the Huttons' lives were to be determined merely by calculating their expected earnings over the remainder of their lives, the damages awarded would fail to reflect the value of the Huttons' personal interest in caring for their grandchildren and the economy incident to their services. See Thrailkill, 879 S.W.2d at 841. Nevertheless, we agree with the City's contention that the evidence presented at trial cannot support the amounts awarded by the trial court, even when we consider evidence of the Huttons' services to the Plaintiff and his family. Accordingly, we modify the trial court's judgment to award the estate of Lena Hutton the sum of $100,000 and the estate of Floyd Hutton the sum of $55,000, for a total award of $155,000.

In modifying the trial court's judgment, we reject the City's argument that the awards should be reduced further based on what the Huttons' reasonable living expenses would have been had they survived. This court previously has held that an appellant cannot complain of the trial court's failure to make a deduction for the decedent's living expenses where the appellant fails to offer proof on this issue at trial. Bradford ex rel. Estate of Bradford v. Swain, 1989 WL 1221, at *5 (Tenn. App. Jan. 13, 1989). Here, the City had ample opportunity to cross-examine the Plaintiff regarding the amount of the Huttons' living

8

expenses but chose not to do so.   Cf. Wallace v. Couch, 642 S.W.2d 141, 144 (Tenn. 1982) (where during discovery process and again at trial defendant attempted to elicit testimony from plaintiff as to amount of decedent's probable living expenses).

As modified, the trial court's judgment is hereby affirmed.   Costs on appeal are taxed to the City of Savannah, for which execution may issue if necessary.

_____
HIGHERS, J.


CONCUR:


_____
FARMER, J.


_____
INMAN, Sr. J.