IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 6, 2010 Session

## CURTIS ROBIN RUSSELL, ET AL. v. ANDERSON COUNTY, ET AL.

### Appeal from the Circuit Court for Anderson County
### No. A4LA0692     Jon Kerry Blackwood, Judge

### No. E2010-00189-COA-R3-CV - Filed February 11, 2011

This is the second appeal of this wrongful death action, arising from a pedestrian versus motor vehicle collision that fatally injured a seven-year-old child at a downtown Clinton intersection. The action was filed pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-101 *et seq.*, against the City of Clinton ("the City") by plaintiffs Curtis Robin Russell ("Mr. Russell") and Dorothy Louise Russell ("Mrs. Russell") (collectively "the Russells") as next of kin of the decedent, their son Curtis Tyler Russell ("Curtis"). The Russells settled with the driver of the vehicle, Ladislav Misek ("Mr. Misek"), who was subsequently dismissed as a party-defendant from the lawsuit. The trial court in the first trial entered judgment after a nonjury trial, apportioning equivalent liability to Mrs. Russell and the City. On appeal, this court held that: (1) the trial court committed reversible error when it failed to rule on the fault to be attributed to Mr. Misek; and (2) material evidence existed for the culpability and fault to be assigned to Mr. Misek. On remand, the trial court altered its judgment, attributing 45% of the fault each to Mrs. Russell and the City and 10% to Mr. Misek. The City appealed. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which Charles D. Susano, Jr., and D. MICHAEL SWINEY, JJ., joined.

Benjamin K. Lauderback, Knoxville, Tennessee, for the appellant, City of Clinton, Tennessee.

Tasha C. Blakney and Ronald C. Koksal, Knoxville, Tennessee, for the appellees, Curtis Robin Russell and Dorothy Louise Russell, as next of kin and natural parents of Curtis Tyler Russell, deceased, and Dorothy Louise Russell, individually.

**OPINION**

**I. BACKGROUND**

This case arises out of a tragic event that occurred at a traffic intersection in the City, at approximately 7 p.m. on November 3, 2003. On that evening, seven-year-old Curtis attended a regional basketball tournament hosted at Clinton Middle School with Mrs. Russell, Curtis's natural mother, and Curtis's two sisters. Clinton Middle School, which is part of the Anderson County School system and operated by the Anderson County Board of Education, is located in the central downtown district of the City. Mr. Russell, the decedent's natural father, did not attend the basketball tournament on the evening in question. Shortly before 7 p.m. and with Mrs. Russell's permission, Curtis left the school gymnasium with his eleven-year-old cousin, R.J. Webber ("R.J."), and his cousin's friend[1] to retrieve a video game from the Webber family vehicle. The three boys stopped before crossing the intersection at West Broad Street and North Hicks Street to observe the traffic conditions and traffic control devices. At or near this same time, Mr. Misek, operating a 1997 Chevrolet S10 pickup truck, was stopped at the same intersection, waiting for the traffic signal to change from red to green so that he could cross North Hicks Street. The Russells aver that while traffic was stopped, Curtis, R.J., and R.J.'s friend proceeded to cross West Broad Street on foot within the marked pedestrian crosswalk on North Hicks Street. When the traffic light turned green, Mr. Misek drove his vehicle forward into the pedestrian crosswalk and intersection, striking Curtis, who was walking slightly ahead of his two companions. Mr. Misek ran over Curtis with both the front and rear driver's side tires of his vehicle. Curtis was transported by Lifestar helicopter from the accident scene to the University of Tennessee Medical Center, where he was pronounced dead later that evening.

On October 5, 2004, the Russells filed their original complaint[2] for wrongful death pursuant to the GTLA.[3] Relevant to this matter, under the GTLA, "[i]mmunity from suit of

---

[1] R.J. and his friend were both sixth grade students at Clinton Middle and familiar with the intersection of West Broad and North Hicks Streets.

[2] Originally named defendants in the action included Anderson County, Anderson County Schools, Anderson County Board of Education, City of Clinton, Clinton Utilities Board ("CUB"), and Ladislav J. Misek. Anderson County was voluntarily dismissed pursuant to Tenn. R. Civ. P. 41.01. The Russells settled with Mr. Misek and CUB, and the claims against these defendants were subsequently dismissed with prejudice. Additionally, the trial court granted summary judgment to both Anderson County Schools and the Anderson County Board of Education.

[3] In addition to the wrongful death claim, Mrs. Russell individually sued for personal injuries
(continued...)

-2-

a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon." Tenn. Code Ann. § 29-20-203(a). The Russells also relied upon Tenn. Code Ann. § 29-20-205, a statutory provision that removes governmental immunity for injuries caused by the negligent act or omission of an employee unless the injury arises out of a discretionary function.

The Russells averred that the City, as a result of its ownership and control of the intersection at issue, was negligent in failing to provide pedestrian signal head devices as mandated by the guidelines and standards provided in the *Manual on Uniform Traffic Control Devices* ("MUTCD").[4] Specifically, Section 4E.03(C) of the MUTCD requires the use of pedestrian signal heads in conjunction with vehicular traffic control signals "[a]t an established school crossing at any signalized location." The Russells also claimed that the City was strictly liable for the intersection's "defective, unsafe, and dangerous" nature, of which the City had actual or constructive notice.

In its responsive pleading, the City asserted that the Russells' allegations failed to state a claim; additionally, the City raised all of the immunities to which it is entitled under the GTLA. The City also asserted an affirmative defense based on the doctrine of modified comparative negligence, claiming that the actions or omissions of Mrs. Russell "were the proximate cause of the alleged damages" and should reduce or bar the Russells' recovery.

This matter proceeded to trial on November 1 and 2, 2007. The trial court, sitting without a jury, concluded that the City was negligent in its failure to provide pedestrian head signals at the subject intersection as required by Section 4E.03 of the MUTCD. In reaching its conclusion, the trial court made a number of findings that are relevant to this appeal. First, the trial court found that pedestrian head signals were required at the intersection – located within a school zone – even after school hours. Second, the trial court determined

---

[3](...continued)
suffered when she witnessed Curtis lying in the intersection shortly after the accident in "a big pool of blood." A pre-trial ruling by the trial court deferred the hearing of Mrs. Russell's independent claim based upon a theory of negligent infliction of emotional distress to a later date, dependent on the outcome of the initial proceeding on the wrongful death action.

[4]The standards set forth in the MUTCD are published by the Federal Highway Administration under 23 CFR part 655, subpart F. The trial court found that the MUTCD has been adopted by this state and the City through enabling legislation in Tenn. Code Ann. § 54-5-108(b) requiring governmental agencies in the state to conform to the provisions of the manual. Tennessee Department of Transportion Rule 1680-3-1-.02 provides that "[t]he United States Department of Transportation, Federal Highway Administration, *Manual on Uniform Traffic Control Devices, Millennium Edition* (2001), is hereby adopted in its entirety and incorporated herein by reference."

that the green light variable sequencing did not provide adequate warning to pedestrians crossing West Broad Street from the island because the light is difficult to observe when the pedestrian is within two feet of the edge of the island. Consequently, the trial court concluded that the absence of such pedestrian head signals rendered the intersection "dangerous, defective, and unsafe." Third, the court found that the City had received notice of this defective and unsafe condition when a school board member had requested the installation of pedestrian head signals at the intersection several years prior to this accident.[5] The trial court further concluded that the MUTCD provided notice to the City of the requirement of pedestrian head signals.

Also found negligent by the trial court was Mrs. Russell. The court determined that she did not inquire as to the location of R.J.'s mother's parked car or what route the boys would be taking to retrieve the video game. The trial court further observed that Mrs. Russell knew it was dark and was aware that Curtis had no knowledge of the area. The trial court specifically found that "a reasonably careful or prudent person would not allow her child to leave the gym under these circumstances without the company of a reasonable adult." The trial court apportioned fault to both the City and Mrs. Russell at 50% each and ordered that the Russells were barred from recovering in this matter.

On December 11, 2007, the Russells filed a motion to alter or amend judgment pursuant to Tenn. R. Civ. P. 59.04. After hearing oral arguments by both parties, the trial court issued its order on April 17, 2008, altering its original judgment "to reflect that Mrs. Russell's negligence will not bar recovery but that the damages awarded . . . shall be reduced in proportion to the percentage of negligence previously assigned to Mrs. Russell." The City then timely filed its notice of appeal, submitting a number of issues for review. In our previous opinion, we "pretermit[ted] all issues raised except whether the Trial Court erred in failing to consider the fault of all parties, specifically the driver of the vehicle that struck Curtis Russell." *Russell v. Anderson County.*, No. E2008-00925-COA-R3-CV, 2009 WL 2877415, at *2 (Tenn. Ct. App. E.S., Sep. 8, 2009). We held that the trial court committed reversible error when it failed to attribute fault to Mr. Misek. Accordingly, we vacated the trial court's judgment and remanded the cause for further consideration on the issue of fault apportionment consistent with our opinion. *Id.* at *3. On remand, the trial court reapportioned fault, assigning 10% to Mr. Misek and 45% each to the City and Mrs. Russell. The City again timely appealed.

---

[5] Trial testimony of William Robert Riggs, Assistant Public Works Director for the City.

## II.  ISSUES FOR REVIEW

The City presents multiple issues for our review, which we consolidate and restate more succinctly as follows:

1.    Whether this court erred by remanding the original appeal back to the trial court with instructions to assign fault to the driver of the motor vehicle, Ladislav Misek.

2.    Whether the trial court erred in finding that the City, pursuant to Section 4E.03(c) of the MUTCD, was on actual or constructive notice of a dangerous or defective condition existing at the intersection at issue such that under the GTLA, and specifically Tenn. Code Ann. § 29-20-203, the immunity veil was removed from the City, allowing the Russells to recover from the City due to a lack of pedestrian head signals.

3.    Whether the trial court erred in not assigning 100% of the fault to Mrs. Russell where the preponderance of the evidence clearly supported such an apportionment.

4.    Whether the trial court erred in finding that the Russells successfully proved damages through a purported expert economist as the testimony of that expert was insufficient as a matter of law.

The Russells present the following issue for review:

5.    Whether the trial court erred in concluding that Mrs. Russell was responsible in any respect for the death of her son and, specifically, whether the trial court erred in finding that Mrs. Russell should be assigned 45% of the fault, where that assignment of fault is equivalent to that assessed to the City, when the record reveals that the City itself should bear the majority of fault for the accident.

## III.  STANDARD OF REVIEW

In a non-jury case such as the one at bar, the standard of review on issues of fact is de novo upon the record of the trial court with a presumption of correctness as to the trial

court's determination of facts. Tenn. R. App. R. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). In reviewing testimony by witnesses at trial, considerable deference must be accorded to the trial court's factual findings that are based on its assessment of witness credibility and the weight of oral testimony. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999). This court imputes no presumption of correctness to the trial court's conclusions of law. *Rutherford County v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

## IV. DISCUSSION

### A.

In its first assignment of error, the City contends that we erred in vacating the trial court's earlier judgment and remanding this case with instructions to apportion fault to Mr. Misek. In our first opinion in this matter, we held "that the Trial Court committed reversible error when it failed to rule on the issue of negligence and fault to be attributed to Mr. Misek." *Russell*, 2009 WL 2877415, at *3. We concluded that there was material evidence pointing to the culpability of Mr. Misek in Curtis's death. *Id.* Specifically, we found Mr. Misek to be negligent in not looking to his left where he had previously observed the three boys and in not paying sufficient attention to them before he drove his pickup truck forward into the intersection. *Id.*

As we noted in our first opinion on this matter, it is well-settled law in Tennessee that where the presence of children is known to the driver, the driver has a heightened duty of care to take into account childish instincts and impulsive behavior, and to take precautions accordingly. *See Townsley v. Yellow Cab Co.*, 237 S.W. 58, 58 (Tenn. 1922); *Kim v. Boucher*, 55 S.W.3d 551, 558 (Tenn. Ct. App. 2001); *Phillips v. Graham*, 1988 WL 1739, at *2 (Tenn. Ct. App. E.S., Jan. 14, 1988); *Staley v. Harkleroad*, 501 S.W.2d 571, 573 (Tenn. Ct. App. 1973). In the same statutory title addressing motor and other vehicles, the due care provision states as follows:

> Notwithstanding the foregoing provisions of this chapter, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and *shall exercise proper precaution* upon observing any child or any confused or incapacitated person upon a roadway.

-6-

Tenn. Code Ann. § 55-8-136(a) (Supp. 2009) (emphasis added).

The City's issue raises the critical question of whether Mr. Misek exercised proper care and caution in operating his vehicle after becoming aware of the children's presence. Upon careful review of the record, we find that Mr. Misek did not consider childish behavior and take proper precautions accordingly. We recapitulate portions of Mr. Misek's deposition, which was read into evidence at trial:

> Q.  When you [Mr. Misek] went into the intersection could you still see the boys on the island?
>
> A.  No, I didn't *because I wasn't paying attention to them*. I was paying attention to the traffic.
>
> Q.  When you saw the boys standing in the island how long did you see them?
>
> A.  As long as it took to travel the two, three blocks.
>
> Q.  So you were able to see them?
>
> A.  Yes.
>
> * * *
>
> Q.  And during that time period you could see the boys the whole time?
>
> A.  Well, *I saw them when I first saw them and that's when, the last time I looked at them*.
>
> Q.  Okay. And that's what I'm trying to understand, is how long did you look at them?
>
> A.  I just glanced at them when I made the turn, when I come inside of the traffic light, and that's when I quit looking.
>
> Q.  Could you see what they were doing?
>
> A.  They was standing on the island.

Q.      Well, *did you see them standing there when you pulled up to the red light?*

A.      *No. I didn't look over at them.* I was paying attention to where I was going.

Q.      During the time that you were stopped, and you told me earlier that you thought that—you thought that that was about a minute. *Did you ever see the boys again on the island?*

A.      *No, because I wasn't looking that way.*

(Emphasis added.)

Clearly, based on his own testimony, Mr. Misek failed to maintain a safe lookout for the children and failed to exercise proper caution in light of the potential dangers known to him immediately before the accident. He admitted that he failed to even glance in the direction of the children prior to accelerating through the intersection. His failure to pay attention is a breach of the duty of care he owed. No material facts have been presented to this court to alter the conclusion that Mr. Misek bears some fault for the accident.

In support of its position, the City relies heavily on our decision in *Leach v. Metropolitan Gov't of Nashville*, a case in which a child escorted by his mother broke free from her grasp and ran into traffic. *Leach*, No. M2000-01487-COA-R3-CV, 2002 WL 31528531, at *1 (Tenn. Ct. App. M.S., Nov. 15, 2002). In that case, we reversed the trial court's judgment, finding that a motorist is under no duty to assume that an escorted child, in the restraint of an adult, will suddenly break free and run into traffic. *Id.* We noted that "[a]lthough the duty of a driver charged with the knowledge of children near the roadway is heightened, the duty is not limitless." *Id.* at *9 (quoting *Scardina v. State Farm Mut. Auto Ins. Co.*, 597 So.2d 1148, 1150 (La. Ct. App. 1992)). Further, we reasoned that "when children are accompanied by their parents or other adults, the degree of care diminishes because it is only reasonable for a prudent person to assume, in the absence of any indication to the contrary, that the parent or other person will guard against a childish impulse and give immediate warning of any sudden change in position which might place the child in peril." *Id.* The City's reliance on the *Leach* case is misplaced, however, as Curtis was escorted by other children, in particular his eleven-year-old cousin – not an adult. Because Curtis was not accompanied by an adult, the degree of care required did not diminish.

Based on the foregoing analysis, we did not err in remanding this cause back to the trial court for a determination of what fault percentage should be allocated to Mr. Misek.

B.

The City next asserts that the trial court erred in finding that actual or constructive notice of a dangerous or defective condition existing at the West Broad-North Hicks intersection had been received by the City, thereby allowing the removal of GTLA immunity. In considering this issue, we must turn to the applicable statutory provisions comprising the GTLA. The General Assembly enacted the GTLA "to codify the general common law rule that 'all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities,' Tenn. Code Ann. § 29-20-201(a), subject to statutory exceptions in the Act's provisions." *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Passage of the GTLA constituted "an act of grace through which the legislature provided general immunity to governmental entities from tort liability but removed it in certain limited and specified instances." *Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn. 1994).

The Russells successfully argued at trial that the following exception applies in this case: "Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. 'Street' or 'highway' includes traffic control devices thereon." Tenn. Code Ann. § 29-20-203(a) (Supp. 2009). As we have stated in *Burgess v. Harley*, "[l]iability under Tenn. Code Ann. § 29-20-203(a) may be predicated on street signs or traffic control devices that cause or contribute to a defective, unsafe, or dangerous condition." *Burgess*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996). The trial court found that the absence of pedestrian head signals rendered the intersection at issue dangerous, defective, and unsafe, and that the governmental entity had "constructive and/or actual notice" of the alleged condition. Tenn. Code Ann. § 29-20-203(b) (Supp. 2009). The trial court held that

> a Pedestrian Head Signal was required at this intersection, even after school hours. The absence of this signal rendered the intersection dangerous, defective and unsafe. The green light variable sequencing as one crosses from the island across Broad offers inadequate warning to pedestrians. As a result, the pedestrian can be "trapped" in this intersection.

Three criteria must be satisfied in a § 29-20-203(a) action. *Burgess*, 934 S.W.2d at 63. First, "the local government must own and control the location or instrumentality alleged to have caused the injury." *Id.* Second, the location or instrumentality must be "defective, unsafe, or dangerous." *Id.* Third, the local government entity must have "constructive and/or actual notice" of the defective, unsafe, or dangerous condition. *Id.* The Tennessee Supreme

Court has defined actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby*, 892 S.W.2d at 409 (quoting *Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950)). Constructive notice, as interpreted by the Court, is "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Id.* (quoting *Black's Law Dictionary* 1062 (6th ed. 1990)).

In the present case, the City has not disputed that it owns and controls the intersection at West Broad Street and North Hicks Street. The following facts are also undisputed: (1) the intersection is adjacent to Clinton Middle School; (2) the City provides a crossing guard for safety purposes at the intersection at issue during morning and afternoon school hours; and (3) the intersection is at a signalized location.

Determining whether a street or intersection is dangerous, defective, or unsafe for purposes of removing governmental immunity under § 29-20-203 is a factual inquiry. *Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn. 1996). In its factual determination, a court should consider the physical aspects of the roadway or intersection, the frequency of accidents at that particular location, and the testimony of expert witnesses. *Sweeney v. State*, 768 S.W.2d 253, 255 (Tenn. 1989).

Prior to the accident at issue in this case, there was no history of pedestrian-vehicle accidents at this intersection. This is only one consideration, however, in a court's determination of whether a roadway or intersection is dangerous or defective. The Russells insist that the "dangerous condition" factor was established by the testimony of their expert witness, Dr. Tyler Kress, along with the applicable provisions of the MUTCD. Dr. Kress, an expert on matters involving accident reconstruction and engineering safety, stated in his affidavit and testified at trial that it was his opinion that the absence of pedestrian head signals created an unsafe, defective, and dangerous condition at the intersection at issue, and that this condition caused or contributed to the injury that occurred. Tenn. Code Ann. § 54-5-108(b) requires governmental agencies in the state to install "signs, signals, markings or postings of traffic regulations" in conformity with the MUTCD. Tenn. Code Ann. § 54-5-108(b) (Supp. 2009). It is undisputed that the MUTCD is the controlling guideline and recognized industry standard for the City. Regarding the application of pedestrian signal heads, the MUTCD provides a number of situations where "[p]edestrian signal heads shall be used in conjunction with vehicular traffic control signals" including at "an established school crossing at any signalized location." MUTCD, Ch. 4E, § 4E.03 (2000). We conclude that the evidence does not preponderate against the trial judge's finding that the West Broad-North Hicks intersection was rendered dangerous and unsafe due to the absence of pedestrian

-10-

head signals.

The remaining criteria is whether the City had actual or constructive notice of any dangerous or unsafe condition at the intersection where the fatal accident occurred. The City maintains that the subject intersection was not an established school crossing at 7 p.m. on the night of the accident; instead, it was a regular city thoroughfare and not subject to the MUTCD standards at issue in this case. The City's expert witness, J. Alan Parham, opined that the MUTCD would only require pedestrian head signals at the intersection from 7:00 a.m. to 8:15 a.m. and 2:15 p.m. to 3:30 p.m. during a school day. As Mr. Parham stated in his affidavit and testified at trial, pedestrian head signals would not be required at the intersection at any other time or on the weekend or when school was not in session. Mr. Parham, therefore, was of the opinion that there was no actual or constructive notice that the City should have had pedestrian head signals activated and working at the time and date of the incident. This expert testimony was contradicted by Dr. Kress, who opined that pursuant to the MUTCD, operational pedestrian head signals were required at the intersection at all times.

We find the City's interpretation of the MUTCD guidelines to be too narrowly construed and unreasonable. Clearly, Section 4E.03 of the MUTCD broadly mandates the placement and use of pedestrian head signals at school crossings at any signalized location. The provision, however, does not specify that the pedestrian head signals only need to be activated during official school hours. A governmental entity's decision to purchase and install pedestrian head signals but then restrict their operation to limited periods is simply illogical. It is predictable and foreseeable that school-sponsored activities, such as the regional basketball tournament in this case, would occasionally occur on school premises after regular school hours and that children would be attending such events. The proximity of the intersection to Clinton Middle School also suggests the likelihood of a high volume of child-pedestrian foot traffic. We therefore agree with the trial court that Section 4E.03 of the MUTCD provided the City with constructive notice of the dangerous, defective, or unsafe condition of the intersection at issue.

Further, we agree with the determination that the City received actual notice of the dangerous and unsafe condition of the intersection several years before the accident when the City received a request from a Board of Education member to install pedestrian head signals at the subject intersection. The economic reason given for not following through with the requested installation is not relevant to the question of whether the City had actual or constructive notice. Accordingly, for the foregoing reasons, we find that the evidence of record supports the trial court's finding that the City had received actual and/or constructive notice of a dangerous or defective condition existing at the intersection.

-11-

## C.

The City notes that the Russells are asking this court to affirm a ruling that allows the Russells to recover from the governmental entity despite the fact that their fault (due to Mrs. Russell's negligence or imputed negligence) was equal to or perhaps greater than the fault assigned to the City. Raising the doctrine of imputed negligence, the City asserts that the law in Tennessee is clear that the negligence of one parent of a child wrongfully killed is imputable to the other spouse so as to preclude recovery by or for the benefit of the parents in an action for the death of the child. *Smith v. Henson*, 381 S.W.2d 892, 895 (Tenn. 1964).[6] *See also Bamberger v. Citizens' St. Ry. Co.*, 31 S.W. 163, 168 (Tenn. 1895); *Anderson v. Memphis St. Ry. Co.*, 227 S.W. 39, 40 (Tenn. 1921); *Nichols v. Nashville Housing Auth.*, 216 S.W.2d 694, 696-97 (Tenn. 1949); *Keener v. Morgan*, 647 F.2d 691, 692 (6th Cir. 1981). According to the City, the view in Tennessee continues to be that tortfeasors are not allowed to recover for their own wrongdoing. Thus, the City contends that the fault of Mrs. Russell should serve as an outright bar to recovery by both the Russells as the beneficiaries of Curtis.

According to the Russells, in a wrongful death suit, only one right of action exists: "the action that the decedent would have had, absent death, against the negligent wrongdoer." *Ki v. State*, 78 S.W.3d 876, 879-80 (Tenn. 2002). Thus, in the view of the Russells, they are only asserting Curtis's right of action on his behalf. *See id.* at 880. The City responds that the wrongful death statute provides that "[t]he right of action . . . shall pass to the person's . . . next of kin; or to the person's personal representative, for the benefit of the person's . . . next of kin . . . ." Tenn. Code Ann. § 20-5-106(a). Therefore, the City asserts that the statute is clear that both the right of action and the benefits of that action are only for the benefit of the next of kin in this case. Accordingly, the City urges this court to not allow the Russells to recover monetarily in view of Mrs. Russell's wrongdoing.

In reply, the Russells contend that "the recovery of *non-negligent beneficiaries*" should not be affected. *See* Day, et al., Tennessee Law of Comparative Fault, at 293(2d ed. 2002) (emphasis added). If the imputed negligence doctrine has been eroded by the adoption of modified comparative negligence, Mr. Russell would be considered a "non-negligent beneficiary." The Russells submit that we should look to the Tennessee Supreme Court's decision in *Fain v. O'Connell*, 909 S.W.2d 790 (Tenn. 1995) for guidance. In *Fain*, the Court observed that the imputation of fault is disfavored in modern day tort law and concluded that since the adoption of comparative fault, "it follows that the doctrine of

---

[6]"A recovery will not be permitted when the negligence of the sole beneficiary thereof proximately contributes to the death for which the recovery of damages is sought. Likewise, contributory negligence of one parent of a child wrongfully killed is imputable to the other so as to preclude recovery by or for the benefit of the parents, or either of them, in an action for the death of the child." *Smith*, 381 S.W.2d at 895.

imputed contributory negligence . . . [not] based on . . . the actual degree of fault . . . should not be adopted by this Court." *Id.* at 794-95. It is noted in the treatise Tennessee Law of Comparative Fault that "[o]ne can see an argument that imputing fault against a blameless parent – especially one not in a position to do anything to have prevented the death – is inconsistent with the philosophy espoused in *Fain*." *Id.* at 295.

Our research has revealed that the doctrine of imputed negligence has largely been abandoned except in special situations or legal relationships such as principal and agent, and master and servant. *See* Speiser, et al., Recovery for Wrongful Death § 15:9 (4th ed.) (citing Restatement Second, Torts §§ 485, 486, 491).[7] Like Tennessee, other states ruled in the past that the negligence of one parent in causing the death of a child was imputed to the other parent, thereby defeating the right of the non-negligent parent to recover for the death. *Id.* However, the great weight of authority today is to the effect that the contributory negligence of one spouse is not imputed to the other spouse to bar recovery for a child's wrongful death. *Id.;* 1 Comparative Negligence Manual § 6:5 (3d ed.). For example, in *Cole v. Fairchild*, 482 S.E.2d 913 (W.Va 1996), West Virginia's highest court held that any negligence on the part of one of the parents of a deceased six-year-old child "may be asserted as a defense in a wrongful death action in accordance with principles of comparative negligence, but the negligence of one parent is not imputed to the other parent in determining the non-negligent parent's wrongful death recovery." *Id. See also Santos v. Chrysler Corp.*, 715 N.E.2d 47 (Mass. 1999); *Roberts v. Aderhold*, 615 S.E. 2d 761 (Ga. Ct. App. 2005). We find this interpretation persuasive. Thus, in Tennessee, we believe that our Supreme Court would find that a negligent parent's negligence should not be imputed to the other parent to reduce the recovery of the non-negligent parent. Accordingly, we find that recovery by the Russells would not be barred.[8]

The City next asserts the trial court erred in not finding greater negligence on the part of Mrs. Russell. In its original judgment, the trial court apportioned equal fault to the City and Mrs. Russell in the death of Curtis. On remand and pursuant to our instructions, the trial court modified its initial order by attributing 45% of the fault each to the City and Mrs. Russell and 10% to Mr. Misek. Similarly, the Russells question whether the trial court assigned an excessive amount of fault to Mrs. Russell. We address both issues together.

---

[7]The Restatement rejects any concept of imputation of negligence from the mere relationship, without more, of a parent-child (see § 488).

[8]We renounce the holding of *Holman v. McMullan Trucking*, 684 So. 2d 1309 (Ala. 1996) (holding, while applying Tennessee law, that the adoption of comparative negligence did not change the rule that the negligence of parent in causing the death of child is imputed to the other parent).

The City argues that the trial court's apportionment of fault is erroneous because (1) the preponderance of the evidence indicates that Mrs. Russell's own actions or inactions precipitated the accident at issue, and (2) the trial court's finding that Curtis would have obeyed pedestrian head signals if they had been installed was purely speculative. The City also assigned as error the trial court's determination that the Russells had proved the causation element of their wrongful death case against the City.

To prevail in a negligence cause of action, a plaintiff is required to establish five elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993).

Relevant to our analysis here is the doctrine of negligence per se. The doctrine is well-settled law in Tennessee and arises from a violation of a statute that prescribes a standard of conduct expected of a reasonable person. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994); *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992). In order to establish negligence per se, three elements must be demonstrated:

> First, it must be shown that the defendant violated a statute or ordinance which "imposes a duty or prohibits an act for the benefit of a person or the public." Second, the proof must show that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance. *In addition to establishing negligence per se by showing these two elements, the plaintiff must of course show that such negligence was the proximate cause of the injury.*

*Smith*, 841 S.W.2d at 831 (internal citations omitted) (emphasis added).

In the present case, the trial court found that the City failed to comply with the applicable mandatory standard in the MUTCD as required in Tenn. Code Ann. § 54-5-108(b). The City, therefore, failed to comply with statutory standards regarding traffic control devices for pedestrian safety at established school crossings. Also, the trial court determined that as a pedestrian attempting to cross the subject intersection that night, Curtis was within the class of persons whom the legislative body intended to benefit and protect.

In *Alex v. Armstrong*, 385 S.W.2d 110 (Tenn. 1964), the Tennessee Supreme Court observed:

> "It is well settled that failure to perform a statutory duty is negligence per se,

-14-

and, if the injury is the proximate result or consequence of the negligent act, there is liability." "It has long been well settled in this State that a violation of a statute which causes injury to one within the protection of the statute is negligence per se and actionable."

*Armstrong*, 385 S.W.2d at 114 (internal citations omitted). Tennessee courts have held that violations of regulations designed to provide for safety constitute negligence per se. *Kingsul Theatres, Inc. v. Quillen*, 196 S.W.2d 316, 318 (Tenn. Ct. App. 1946). We conclude that the evidence does not preponderate against the trial court's finding of negligence per se.

Negligence per se, however, is not tantamount to liability per se. *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003). "Liability cannot be predicated upon mere violations of a statute, ordinance, or regulation unless it affirmatively appears that such violation was the proximate cause of the injury." *Long by Cotten v. Brookside Manor*, 885 S.W.2d 70, 73-74 (Tenn. Ct. App. 1994) (citing *Biggert v. Memphis Power & Light Co.*, 80 S.W.2d 90, 92 (Tenn. 1935)).

In *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993), the Tennessee Supreme Court observed:

> Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.'"

*Id.* at 598 (internal citations omitted).

The trial court concluded that the lack of pedestrian head signals caused Curtis to become trapped in the intersection, resulting in the child being run over by Mr. Misek. Thus, the Russells established causation.

In *McClenahan v. Cooley*, the Tennessee Supreme Court articulated a three-prong test for assessing proximate causation:

(1) [T]he tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*McClenahan*, 806 S.W.2d 767, 775 (Tenn. 1991). An injury may be proximately caused by more than one negligent act or omission. *Kelley v. Johnson*, 796 S.W.2d 155, 159 (Tenn. Ct. App. 1990). Thus, a negligent act or omission need not be the sole cause of an injury to be a proximate cause. *McClenahan,* 806 S.W.2d at 775.

In our view, the trial court reasonably found that the lack of pedestrian head signals, concurring with the negligence of Mrs. Russell and Mr. Miksal, was a substantial factor in bringing about the harm that occurred. The evidence supports the conclusion by the trial court that the omission by the City resulted in a failure to prevent the death of Curtis. *See Dowdy v. Wilson*, No. 02A01-9709-CV-00237, 1998 WL 886610, at *3 (Tenn. Ct. App. M.S., Dec. 21, 1998) ("Proximate cause is that act or omission which immediately causes or fails to prevent the plaintiff's injury; an act or omission occurring or concurring with another which, if it had not happened, injury would not have been inflicted." We affirm the trial court's attribution of 45% of the fault to the City.

As to the Russells, they assert that the preponderance of the evidence weighs in favor of reducing or eliminating the fault assigned by the trial court to Mrs. Russell and increasing the fault assessed to the City. They contend that the trial court based its findings in large measure upon its opinion that the accident "could have been avoided" if Curtis had been in the "company of a reasonable adult." The Russells assert there was no proof in the record that the accident would have been avoided under those circumstances, particularly in light of the absence of the mandatory pedestrian head signals. They further submit that any fault on the part of Mrs. Russell cannot compare to the willful neglect of the City in failing to install the required safety features despite years of notice.

On cross-examination, Mrs. Russell testified as follows:

Q.    And you were aware that Curtis wanted to go get his video game.

A.    Yes.

Q.    And you were not aware, though, where he had to go to get the

-16-

video game, were you?

A.      No.

Q.      You were not aware that it was across two city streets into a city parking lot, were you?

A.      No.

Q.      You were not aware that there was a traffic signal at that intersection when you let him go, were you?

A.      No.

* * *

Q.      But you didn't ask your sister, Where is your car, did you, before you let them leave?

A.      No.

Q.      And you didn't ask RJ, where is the car or van?

(Objection by Plaintiffs' counsel overruled.)

Q.      You didn't ask RJ where the car was, did you?

A.      No.

The record indicated that Mrs. Russell was not familiar with Clinton Middle School or the intersection where the fatal accident occurred. Mrs. Russell testified that she neither knew the location of her sister's parked car nor did she ask. She also did not know the route that the boys would be taking to retrieve the video game and she did not inquire. Finally, Mrs. Russell knew that her son Curtis had no knowledge of the area in which he would be traveling on foot, and she was aware that it was getting dark outside.

Although Mrs. Russell testified that she believed R.J. to be a very mature and responsible boy who had looked after Curtis on previous occasions, he was still an eleven-year-old youth who was placed in charge of the safety and welfare of a seven-year-old child. Accordingly, we agree with the trial court's finding that "a reasonably careful or prudent

-17-

person would not allow her child to leave the gym under these circumstances without the company of a reasonable adult." For the aforementioned reasons, we do not find that the evidence preponderates against the trial court's attribution of 45% fault to Mrs. Russell.

The City also argues that a plaintiff may recover damages "*only* where a trier of fact determines that the Plaintiff's percentage of fault is *less than* that of the Defendant . . . ." *Jones v. Idles*, 114 S.W.3d 911, 913 (Tenn. 2003) (emphasis in original). Both the original ruling of the trial court and the ruling on remand failed to find Mrs. Russell's negligence was less than the City's. Therefore, the City argues that recovery is not permitted because Mrs. Russell has fault equal to the City.

In *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), the Tennessee Supreme Court held that in cases of multiple tortfeasors, a "plaintiff will be entitled to recover so long as plaintiff's fault is less than the combined fault of all tortfeasors." *Id.* at 58; *Dowdy*, 1998 WL 886610, at \*4. The City argues that the *McIntyre* court did not hold this recovery could be made from only one of the defendants with whom the plaintiff had equal or greater fault. It is argued by the City that there is not "a single case in Tennessee, post-*McIntyre*, where a Defendant who has fault equal to the Plaintiff is nonetheless required to pay a judgment to the Plaintiff." Thus, the City contends that any recovery in this matter by the Russells should be barred.

Under the facts of this case, the combined total fault of the City and Mr. Misek is 55%. Because Mrs. Russell's fault is less than the combined fault of the other tortfeasors, we find that recovery is not barred. See *McIntyre*, 833 S.W.2d at 58; *Dowdy*, 1998 WL 886610, at \*4, 5.

**D.**

The City's final assignment of error concerns the finding by the trial court that the Russells successfully proved damages through a purported expert economist as the testimony of that expert was insufficient as a matter of law. The applicable statute is Tenn. Code Ann. § 20-5-113, which governs the types of damages recoverable in wrongful death cases. This provision states:

> Where a person's death is caused by the wrongful act, fault or omission of another and suit is brought for damages, as provided for by §§ 20-5-106 and 20-5-107, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages

-18-

resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

Tenn. Code Ann. § 20-5-113 (Supp. 2009).

When a plaintiff's recovery is based upon the pecuniary value of the decedent's life, the trier of fact must consider these factors in making this determination: the decedent's life expectancy, "age, condition of health and strength, capacity for labor and for earning money through skill in any art, trade, profession, and occupation or business." *Thrailkill v. Patterson*, 879 S.W.2d 836, 841 (Tenn. 1994); *see also Thurmon v. Sellers*, 62 S.W.3d 145, 161 (Tenn. Ct. App. 2001). When assessing the amount of damages based on life expectancy and earning capacity, the Tennessee Supreme Court has stated that the award should be reduced by deducting the decedent's "probable living expenses" or personal maintenance costs had the decedent lived. *Wallace v. Couch*, 642 S.W.2d 141, 142 (Tenn. 1982); *see also Jordan v. Baptist Three Rivers Hosp.,* 984 S.W.2d 593, 600 (Tenn. 1999); *Thurmon*, 62 S.W.3d at 161; *Hutton v. City of Savannah*, 968 S.W.2d 808, 811-12 (Tenn. Ct. App. 1997). In the *Thurmon* case, in dicta, a panel of this court observed that in situations where the decedent is a minor child, the probable living expenses are those costs associated with child-rearing. *Thurmon*, 62 S.W.3d at 161 ("In the case of a very young child, estimates of the child's future earnings and contributions are speculative at best.")

In the present case, the Russells introduced at trial the expert testimony of Dr. Robert A. Bohm, Professor and Head of the Department of Economics at the University of Tennessee (Knoxville) at the time. His fields of specialization included valuation of life. Dr. Bohm testified to the pecuniary value of Curtis's life after preparing an appraisal of the deceased's lost earning capacity. In arriving at a valuation figure of $1,150,000, Dr. Bohm based his determination on his opinion that Curtis would have completed some college education and would have been married with children. On cross-examination, Dr. Bohm testified that he did not deduct child-rearing expenses and that his appraisal numbers started with the deceased at age 18. When the expert witness was asked what the cost of raising a child would be from age 7 to 18, the witness stated, "I haven't got the slightest idea." Based on Dr. Bohm's testimony, the trial court found the decedent's pecuniary value to be $1,150,000.[9]

"Expert testimony is not conclusive, even if uncontradicted, but is rather purely advisory in character, and the trier of fact may place whatever weight it chooses on such testimony." *Thurmon*, 62 S.W.3d at 162 (citing *Gibson v. Ferguson*, 562 S.W.2d 188, 189-

---

[9]The Russells were awarded $1,100,000 in loss of consortium damages, along with stipulated damages for medical and funeral expenses.

90 (Tenn. 1976)).

The City's contention depends on the *Thurmon* Court's statement that child-rearing costs should be deducted from the pecuniary value of the deceased minor child. However, our previous statements made in dicta are not binding as precedent. We therefore decline to dismiss the testimony provided by Dr. Bohm on Curtis's pecuniary value for two reasons. First, unless the evidence at trial preponderates against the trial court's findings, we must affirm the trial court's determination of the decedent's pecuniary value absent an error of law. Second, the City failed to carry its burden of proof in presenting evidence at trial upon which a deduction of child-rearing expenses could be assessed. Based on the foregoing analysis, in view of the fact that Dr. Bohm's appraisal started at age 18 – not age seven – we affirm the trial court's findings on this issue.

## V. CONCLUSION

The judgment of the trial court is affirmed and remanded. Costs of the appeal are charged to the appellant, City of Clinton.

_____
JOHN W. McCLARTY, JUDGE